No. 24-60209

---

# In the United States Court of Appeals
## For the Fifth Circuit

---

**TEXAS CORN PRODUCERS; TEXAS SORGHUM PRODUCERS; NATIONAL SORGHUM PRODUCERS; TEXAS FOOD & FUEL ASSOCIATION,**
*Petitioners,*

**v.**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN,** *in his official capacity as the Administrator of the United States Environmental Protection Agency,*
*Respondents.*

---

On Petition for Review of a Rule of the
U.S. Environmental Protection Agency

---

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION FOR VOLUNTARY REMAND

---

Michael Buschbacher
R. Trent McCotter
James R. Conde
  *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
jconde@boydengray.com
*Counsel for Petitioners*

# CERTIFICATE OF INTERESTED PERSONS

## *Texas Corn Producers, et al. v. United States Environmental Protection Agency, et al.*
No. 24-60209

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Petitioner Texas Corn Producers is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

Petitioner Texas Sorghum Producers is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

Petitioner National Sorghum Producers is a non-profit agricultural organization. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

Texas Food & Fuel Association is a non-profit trade association representing the retail and wholesale sectors of the oil and gas industry

in Texas. It has no parent companies, and no publicly held company has a 10% or greater ownership interest in it.

The United States Environmental Protection Agency ("EPA") is an agency of the United States.

Michael S. Regan is the Administrator of the United States Environmental Protection Agency.

Michael Buschbacher, R. Trent McCotter, James R. Conde, and Laura B. Ruppalt of Boyden Gray PLLC—*Counsel for Petitioners*.

Albert Lin—*Counsel for Respondents*.


November 19, 2024                    Respectfully submitted,

                                     /s/ James R. Conde
                                     BOYDEN GRAY PLLC
                                     800 Connecticut Ave. NW,
                                     Suite 900
                                     Washington, DC 20006
                                     (202) 955-0620
                                     *Counsel of Record for Petitioners*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................iii

TABLE OF CONTENTS ......................................................... v

TABLE OF AUTHORITIES......................................................vi

INTRODUCTION................................................................... 1

BACKGROUND ..................................................................... 3

    I.    Statutory Background............................................... 3

    II.   Regulatory Background ........................................... 4

           A.    The Proposed Adjustment...................................5

           B.    The Comments ....................................................6

           C.    The Final Adjustment......................................... 8

    III.  Procedural History ................................................. 9

ARGUMENT ........................................................................ 10

           A.    EPA's Requested Voluntary Remand Is Contrary to Law ................................................................... 10

           B.    EPA's Requested Voluntary Remand Is Inequitable .. 16

           C.    Vacatur Would Be Warranted .....................................21

           D.    The Court Could Decide the Merits Are Conceded and Vacate Now ........................................................24

CONCLUSION .................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pub. Gas Ass'n v. Dep't of Energy,*
22 F.4th 1018 (D.C. Cir. 2022) ................................................ 12, 20, 23

*Cent. Power & Light Co. v. United States,*
634 F.2d 137 (5th Cir. 1980) ............................................................ 11

*Chamber of Com. of U.S. v. Sec. & Exch. Comm'n,*
85 F.4th 760 (5th Cir. 2023) ............................................................ 23

*Chamber of Com. of U.S. v. Sec. & Exch. Comm'n,*
88 F.4th 1115 (5th Cir. 2023) ............................................... 10, 22, 23

*Clean Wisconsin v. EPA,*
964 F.3d 1145 (D.C. Cir. 2020) ......................................................... 24

*Cohens v. Virginia,*
19 U.S. 264 (1821) ............................................................................. 12

*ConocoPhillips Co. v. EPA,*
612 F.3d 822 (5th Cir. 2010) .................................................... 2, 13, 16

*Ethyl Corp. v. Browner,*
989 F.2d 522 (D.C. Cir. 1993) .......................................................... 15

*La. Env't Action Network v. EPA,*
382 F.3d 575 (5th Cir. 2004) ............................................................ 13

*Lewis v. United States,*
88 F.4th 1073 (5th Cir. 2023) .......................................................... 14

*New Orleans Pub. Serv., Inc. v. Council of City of New*
*Orleans,* 491 U.S. 350 (1989) .................................................... 12, 16

*Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug*
*Admin.,* 740 F.2d 21 (D.C. Cir. 1984) ............................................. 13

*Sackett v. EPA,*
566 U.S. 120 (2012) .................................................................. 11

*Sec. & Exch. Comm'n v. Jarkesy,*
144 S. Ct. 2117 (2024) ...............................................................

*SKF USA Inc. v. United States,*
254 F.3d 1022 (Fed. Cir. 2001) ...............................................

*Texas v. United States,*
50 F.4th 498 (5th Cir. 2022) .....................................................

*Util. Solid Waste Activities Grp. v. EPA,*
901 F.3d 414 (D.C. Cir. 2018) ................................................

**Statutes**

5 U.S.C. § 702 ........................................................................ 1, 10

5 U.S.C. § 706 .............................................................................. 21

26 U.S.C. § 4064(a) ....................................................................... 3

26 U.S.C. § 4064(c)(1) ............................................................ 3, 4, 5

42 U.S.C. § 6201(5) ....................................................................... 3

49 U.S.C. § 32901(a)(16)(A) ...................................................... 17

49 U.S.C. § 32902(a) ..................................................................... 3

49 U.S.C. § 32902(f) ...................................................................... 3

49 U.S.C. § 32904(c) .................................................................. 4, 5

49 U.S.C. § 32909(a)(1) ............................................................... 11

Pub. L. No. 94-163, 89 Stat 871 (1975) ..................................... 3

**Regulations**

40 C.F.R. § 86.113-15 ................................................................... 5

40 C.F.R. § 600.113-12(o)(1) ........................................................ 8

40 C.F.R. § 1065.710(c) .............................................................. 4

**Federal Register**

79 Fed. Reg. 23,414 (Apr. 28, 2014) .................................... 5, 6, 19

85 Fed. Reg. 28,564 (May 13, 2020) ....................................... 6, 19

88 Fed. Reg. 29,184 (May 5, 2023) ................................................ 8

89 Fed. Reg. 22,041 (Mar. 29, 2024) .......................................... 18

89 Fed. Reg. 27,842 (Apr. 18, 2024) ........................................ 8, 17

**Other Authorities**

EPA, EPA-420-R-23-033, *The 2023 Automotive Trends
  Report* (Dec. 2023) ................................................................ 18

Joshua Revesz, *Voluntary Remands: A Critical Assessment*,
  70 Admin. L. Rev. 361 (2018) ........................... 1, 11, 16, 20

*Lucy Pulls the Football Away from Charlie Brown*,
  YouTube (uploaded Apr. 10, 2021) ........................................ 1

Webster's New International Dictionary
  (2nd ed., unabr. 1954) ........................................................ 11

**INTRODUCTION**

After Petitioners filed their principal brief, EPA had an epiphany: it was headed toward a likely judicial rebuke. So, with little to say on the merits, EPA now seeks to "snatch a temporary victory from the jaws of potential defeat." Joshua Revesz, *Voluntary Remands: A Critical Assessment*, 70 Admin. L. Rev. 361, 370 (2018). Without confessing error, EPA asks for a voluntary remand without vacatur (or any real strings attached) so that it may reconsider the rule in light of the arguments raised by Petitioners in their brief—the *very same* arguments that commenters raised four years ago, and again a year ago, and that EPA, in the final rule, blatantly ignored.

The Court shouldn't allow EPA to play Lucy with the football. *See Lucy Pulls the Football Away from Charlie Brown*, YouTube (uploaded Apr. 10, 2021), https://www.youtube.com/watch?v=9dsm7K1Xkn4. When an agency promulgates a *final* rule, the Administrative Procedure Act ("APA") says that "aggrieved" persons, such as Petitioners here, are "*entitled* to judicial review thereof." 5 U.S.C. § 702 (emphasis added). That right is not defeasible at EPA's option, or by making generic appeals to "judicial economy."

Moreover, indefinitely postponing judicial review until EPA promulgates a new final rule would be wrong. EPA delayed this final rule for a decade, brazenly disregarded the same criticisms it belatedly now claims to be taking seriously, and even now refuses to confess error. A remand under these circumstances would prejudice Petitioners, invite years of yet more delay, and irreparably harm the rule of law. The Court should deny the motion. At a minimum, EPA's motion presents controversial questions related to the merits of the dispute—in particular, whether vacatur would be appropriate—and should therefore be carried over to the merits panel and decided after full briefing and argument. *See, e.g.*, *ConocoPhillips Co. v. EPA*, 612 F.3d 822, 831 (5th Cir. 2010) (ordering opposed motion for voluntary remand "to be carried with [the] case").[1] In the alternative, the Court should treat EPA's motion as a concession that it can't satisfy the requirement of reasoned decisionmaking on this record, declare the rule arbitrary and capricious, and vacate the rule.

---

[1] The Court should also issue a new briefing notice to EPA, as the current notice was suspended by order of the clerk.

# BACKGROUND

## I.    Statutory Background

In 1975, Congress enacted a fuel-economy program to "provide for improved energy efficiency of motor vehicles." Pub. L. No. 94-163, § 2, 89 Stat 871, 874 (1975), *codified at* 42 U.S.C. § 6201(5). Congress set fuel-economy targets for some model years and vested the Secretary of Transportation with residual authority to prescribe fleet-average standards for automobile manufacturers for other model years. 49 U.S.C. § 32902(a), (f).

Since 1978, Congress has also imposed a "gas-guzzler" tax to discourage manufacturers from making certain low-efficiency passenger automobiles. *See* 26 U.S.C. § 4064(a). The Internal Revenue Service collects this tax under a statutory table that depends on an automobile's fuel economy. *Id.* For example, under the statute, a manufacturer that produces a covered automobile with a measured fuel economy of "[a]t least 18.5 but less than 19.5" miles per gallon (mpg) owes the government $2,100. *Id.*

EPA administers the test procedures that manufacturers use to measure automobile fuel economy under both programs. *Id.* § 4064(c)(1);

49 U.S.C. § 32904(c). Congress gave EPA that job because the agency already administered test procedures to measure automobile emissions of air pollutants under the Clean Air Act—the tests must be "carried out" together when "practicable." 49 U.S.C. § 32904(c).

But EPA's authority comes with a catch: EPA must "use the same procedures … used for model year 1975 …, or procedures that give comparable results." *Id.*; 26 U.S.C. § 4064(c)(1). By requiring "comparable results," Congress ensured that EPA cannot change the stringency of the fuel-economy standards or the gas-guzzler tax through the backdoor, i.e., by changing the test procedures. *See* Pet'rs' Br. 10–11, Doc. 30.

## II. Regulatory Background

One of the factors that affects an automobile's fuel economy is the test fuel used. In particular, the test fuel's energy density, quantified by its "net heating value," matters quite a bit. The more energy in a given gallon of fuel, the better the automobile's measured fuel economy, all else equal. Pet'rs' Br. 14–18, Doc. 30.

For years, EPA required manufacturers to use a gasoline test fuel known as "indolene" ("E0"), which contains no ethanol. 40 C.F.R.

§ 1065.710(c). In 2014, however, EPA ordered a switch to a gasoline test fuel that contained approximately 10% ethanol by volume ("E10"), which is more widely used in the marketplace. 79 Fed. Reg. 23,414, 23,525–26 (Apr. 28, 2014); 40 C.F.R. § 86.113-15. But the E10 test fuel has a considerably lower energy density than the E0 test fuel. EPA, therefore, must make an adjustment to keep ensuring "comparable results." 49 U.S.C. § 32904(c); 26 U.S.C. § 4064(c)(1).

## A.   The Proposed Adjustment

EPA, however, kicked the can down the road on the required adjustment for E10. Although it required that manufacturers use the E10 test fuel to measure so-called "criteria pollutant" emissions—nitrogen oxides, particulate matter, and the like—EPA deferred the use of E10 for measuring fuel economy and greenhouse-gas emissions so the agency could investigate the sensitivity of modern vehicles to the change in the test fuels. 79 Fed. Reg. at 23,424, 23,531. This delay imposed an unnecessary double-testing burden on manufacturers, with criteria pollutant emissions measured using E10, and fuel economy measured using E0. EPA justified this burden by arguing that double testing "will

provide data needed" to develop a sensitivity factor "in early to mid 2015." *Id.* at 23,532.

Years went by. Then, in 2020, EPA at last proposed a sensitivity factor for the E10 test fuel that the agency called "$R_a$." 85 Fed. Reg. 28,564, 28,574–75 (May 13, 2020). This sensitivity factor did not rely upon manufacturer testing data, as EPA had promised. Instead, it was based upon an EPA test program (the "Test Program") of only eleven vehicles completed more than two years earlier. *Id.* at 28,568–69. Based upon data from only ten of those vehicles, EPA proposed "an $R_a$ value of 0.81." *Id.* at 28,575. An $R_a$ of 0.81 implies that for every 10% change in the energy density of a test fuel, average fuel economy changes by only 8.1%. *Id.* at 28,574. In other words, EPA's $R_a$ means that manufacturers get only a partial adjustment for the lower energy density of the test fuel, predictably making compliance with fuel-economy standards harder, increasing gas-guzzler taxes, and thereby decreasing fuel demand. Pet'rs' Br. 32–34, Doc. 30.

## B.    The Comments

Aggrieved parties, including Petitioners here, as well as the Alliance for Automotive Innovation (the "Alliance")—the automobile

manufacturer trade association—filed detailed comments objecting to EPA's proposed $R_a$ factor on numerous grounds. Commenters criticized the Test Program for testing the wrong vehicles, which weren't representative of the fleet, and too few vehicles to accurately determine the adjustment, even according to EPA's guidance. They also criticized EPA's analysis: EPA arbitrarily included outlier data from a malfunctioning Chevy Malibu that reduced the sensitivity factor, and unscientifically excluded "unexpected" results from an Acura that would have increased the sensitivity factor. Finally, commenters argued that EPA ignored the best-available data, including manufacturer compliance data and studies co-authored by EPA staff that showed the sensitivity factor should be "1.0". These comments are further summarized in Petitioners' principal brief, Pet'rs' Br. 23–29, Doc. 30, and available in the administrative record.[2]

Faced with these criticisms, EPA decided to delay again.

---

[2] *See* Alliance Comments (Aug. 14, 2020), Doc. No. EPA-HQ-OAR-2016-0604-0087, *available at* https://www.regulations.gov/comment/EPA-HQ-OAR-2016-0604-0087; Illinois Corn Growers Ass'n et al. Comments (Aug. 14, 2020), Doc. No. EPA-HQ-OAR-2016-0604-0086, *available at* https://www.regulations.gov/comment/EPA-HQ-OAR-2016-0604-0086.

## C. The Final Adjustment

Finally, in 2023—nearly three years after first seeking comment—the proposal suddenly re-emerged, now buried in an enormous and controversial Clean Air Act rulemaking that aims to electrify automobiles nationwide. 88 Fed. Reg. 29,184 (May 5, 2023). In a single paragraph of a preamble that spanned 263 pages of the Federal Register (totaling over 200,000 words), EPA proposed adopting the "revised equation for calculating fuel economy that uses an 'R-factor' of 0.81," as "described in the 2020 proposal." *Id.* at 29,241. EPA stated it would "be reevaluating comments received on the 2020 proposal as well as the comments for this proposal." *Id.* Commenters renewed their objections in detailed comments.

On April 18, 2024, EPA promulgated its new sensitivity factor. 89 Fed. Reg. 27,842, 28,203 (Apr. 18, 2024); 40 C.F.R. § 600.113-12(o)(1) ("$R_a$ = 0.81"). The final rule barely mentions $R_a$. In a bullet point, EPA states that it was "finalizing an R-Factor of 0.81 based on the technical analysis provided in the 2020" proposal and referred to its "Response to Comments" document "for a more detailed discussion." 89 Fed. Reg. at 27,912–13. But EPA's "discussion" there was not "detailed"; it was

conclusory. EPA brushed away all criticism of its Test Program by blithely asserting that the sensitivity "factor was generated from a study carefully designed and rigorously conducted at EPA's lab"—full stop. EPA, *Response to Comments* 1278 (Mar. 2024), Doc. No. EPA-HQ-OAR-2022-0829-5743, *available at* https://www.regulations.gov/document/EPA-HQ-OAR-2022-0829-5743. EPA didn't address commenters' criticisms that the number of vehicles was too small or that the vehicles were too outdated, or that EPA threw out the Acura data without an adequate scientific justification. EPA said that the outlier Malibu data was included simply because it was "within the expected" (i.e., desired) "range." *Id.*

## III. Procedural History

Petitioners filed a petition for review on April 26, 2024. Doc. 1. On August 16, 2024, Petitioners filed their principal brief. Pet'rs' Br., Doc. 30. Tracking the same issues raised in the 2020 and 2023 comments, the brief argues that EPA's sensitivity factor is unreasonable and unreasonably explained. *Id.* at 39–63.

On November 11, 2024, EPA moved for a voluntarily remand without vacatur. *See* Resp'ts' Mot. for Voluntary Remand Without

Vacatur, Doc. 46-1 ("Motion"). In support, EPA asserts that, "[i]n response to the Petition for Review," EPA has decided to reconsider the $R_a$ factor. Decl. of Sarah Dunham ¶ 14, Doc. 46-2 ("Dunham Decl."). Now, "EPA agrees that vehicle technology has changed since the 2018 Study was completed and that additional testing with more and newer vehicles could improve the study." *Id.* EPA claims it plans to test and analyze 50 to 100 newer vehicles. *Id.* ¶ 16. Despite agreeing to "improve" the study in response to Petitioners' arguments, however, EPA doesn't "concede" the merits. *Id.* ¶ 14. EPA "expects to" promulgate a new "final rule by December 1, 2026." *Id.* ¶ 18. EPA also claims that Petitioners won't be harmed by an additional years-long delay. Motion 7–8.

## ARGUMENT

### A. EPA's Requested Voluntary Remand Is Contrary to Law

#### 1. *A voluntary remand would be inconsistent with text and precedent*

Under the APA, Petitioners are "*entitled* to judicial review" of the rule. 5 U.S.C. § 702 (emphasis added). Petitioners are also ordinarily entitled to meaningful remedies if they prevail: "the default rule is that vacatur is the appropriate remedy." *Chamber of Com. of U.S. v. Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023) (cleaned up). Through

its Motion, however, EPA seeks to defeat the right to judicial review and "rid itself of a lawsuit without refuting [Petitioners'] legal contentions," without confessing error, and without agreeing to meaningful remedies or limits. Revesz, *supra*, at 367. In the agency's words, EPA claims a "right to seek voluntary remand of a challenged decision, without confessing error." Motion 5–6.

That asserted "right" gets the APA backwards. To be "entitled to judicial review" means to have "a right or legal title to" it. Webster's New International Dictionary 854 (2nd ed., unabr. 1954). A right, by definition, is not defeasible at the option of the defendant or court, merely to avoid inconvenient legal defeats or conserve resources. EPA points to no statutory text that would overcome the APA's "presumption of judicial review" and entitle it to a remand. *Sackett v. EPA*, 566 U.S. 120, 130 (2012). To the contrary, the organic statute confirms Petitioners' right to judicial review. 49 U.S.C. § 32909(a)(1). Absent supporting text—and there is none here—an agency's motion for a voluntary remand should be disfavored. *Cf. Cent. Power & Light Co. v. United States*, 634 F.2d 137, 153 (5th Cir. 1980) (denying motion for voluntary remand that conflicted with statutory text).

EPA's "right to" have this Court "decline the exercise of jurisdiction which is given" and remand would also be "treason to the [C]onstitution." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). "[F]ederal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989). A voluntary remand is just judicial "abstention" by another name, but one without even the fig leaf of a federalism justification. "The present case does not involve a state-law claim," so judicial abstention "is not justified in these circumstances." *Id.* at 361–62.

There are also practical reasons to entertain unilateral requests for a voluntary remand with a jaundiced eye. A remand, after all, is rife with the risk of agency delay: "[t]he agency may have little or no incentive to fix the deficient rule. Both common sense and the empirical literature confirm this." *Am. Pub. Gas Ass'n v. Dep't of Energy*, 22 F.4th 1018, 1030 (D.C. Cir. 2022). More so when an agency with a pattern of delay seeks to avoid a decision on the merits, without confessing error, without agreeing to any meaningful limits—just "status reports"—and

contemplates an extended timeline for rulemaking that is measured in years, not days or months.

Given the risk of opportunistic agency behavior, this Court has rarely granted a voluntary remand of a challenged rule. And when it has, a remand was justified by exceptional circumstances, such as an intervening change in controlling law, and only after the Court assured itself that a remand would "work no prejudice to any affected entity." *ConocoPhillips*, 612 F.3d at 832; *see also La. Env't Action Network v. EPA*, 382 F.3d 575, 580 (5th Cir. 2004) (granting EPA motion for a voluntary remand when intervening circuit precedent held that EPA's practice of extending deadlines was unlawful, and EPA "vacated" its action on remand).

Here, the agency points to no changes in law or other exceptional circumstances that would warrant a voluntary remand. It just asks for a mulligan. To receive a remand, however, EPA must do more than merely ask or claim. It must "provide a reasoned explanation" for its failure to perform the testing it now proposes earlier because, as explained *infra*, a voluntary remand at this stage would prejudice Petitioners by creating "delay [that] is tantamount to [a] denial of the petition." *Pub. Citizen*

*Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 35 (D.C. Cir. 1984). EPA has not done so.

This Court has also never granted a voluntary remand where, as here, (1) the merits are not close, (2) the agency doesn't confess error, and (3) the agency has a pattern of delay and seeks a remand for an extended period of time. *Cf. Lewis v. United States*, 88 F.4th 1073, 1079 (5th Cir. 2023) (denying an "ordinary remand" under similar circumstances). Here, EPA refused to engage with technical criticisms of its Test Program, clearly violating the APA. Pet'rs' Br. 41, Doc. 30. EPA doesn't confess error. Motion 6–7. And EPA has delayed the required sensitivity factor for a decade. Contrary to EPA's protestations, Motion 11, it is not Petitioners, but the agency itself, that has mandated avoidable double testing with two different test fuels for years. It now seeks another delay of over two years, at least.

Given these circumstances, the Court should deny a voluntary remand. "Enough is enough." *Lewis*, 88 F.4th at 1076.

## 2. *EPA's out-of-circuit precedents are inapposite and unpersuasive*

EPA can find no binding precedent for its asserted "right" to a voluntary remand, so the agency turns to dicta in a Federal Circuit

decision and two inapposite D.C. Circuit cases. Motion 5–7 (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (quoting *SKF*, 254 F.3d at 1029); *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). But none of those decisions did what EPA asks this Court to do here: grant an open-ended voluntary remand where the agency confesses no error and cites no changed law or other exceptional circumstances justifying a do-over. *See SKF*, 254 F.3d at 1029 (requesting "remand because [the agency] believes that its original decision is incorrect on the merits"); *Util. Solid Waste Activities Grp.*, 901 F.3d at 425–26, 437 (requesting remand to reconsider rule in light of intervening legislation); *Ethyl Corp.*, 989 F.2d at 523–24 (remanding to EPA "to redetermine within 180 days" whether to grant a waiver allowing the sale of a fuel additive in commerce, where EPA "acknowledge[d] that evidence developed since denial of the waiver has undermined the stated basis for denial").

To the extent dicta in EPA's cited cases suggests that a voluntary remand should be automatically favored, that is inconsistent with the APA's text and its presumption in favor of judicial review. Any such

presumption also rests upon a naïve view of the agency process. Scholars have criticized the "analytic flaws" of the Federal and D.C. Circuits' approach, and explained that their caselaw originates in a New Deal vision of courts as collaborators of "trustworthy" executive agencies. Revesz, *supra*, at 382–83, 394–95. That vision, to put it mildly, is not the Framers.' *Cf. Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2143–44 (2024) (Gorsuch, J., concurring).

\*\*\*

"[F]ederal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred," even if an agency or court thinks that convenient. *New Orleans Pub. Serv., Inc.*, 491 U.S. at 358. Here, Congress vested this Court with jurisdiction and gave Petitioners a right to review. The Court should follow statutory text, not contrary dicta from another circuit.

### B.  EPA's Requested Voluntary Remand Is Inequitable

The Court should also deny a voluntary remand because it would be inequitable and against the public interest. A remand would "prejudice" petitioners, conserve few, if any, resources, and harm the rule of law. *ConocoPhillips*, 612 F.3d at 832.

### 1. A remand would prejudice Petitioners

First, a remand would prejudice Petitioners. EPA is wrong that Petitioners would suffer no harm before "December 2026," when EPA "expects" to promulgate a new final rule. Motion 7–8. As EPA acknowledges, manufacturers will begin using E10 with the new sensitivity factor at least by model year 2027. *Id.* Indeed, by model year 2027, manufacturers will be legally obligated to test automobile fuel economy using E10 and the sensitivity factor, except for automobiles that may use carry-over testing data from prior model years in lieu of testing. 89 Fed. Reg. at 27,912.

Model year 2027, however, does not mean "calendar year" 2027. Model year 2027 is an "annual production period" that starts as early as January 2, 2026, well before EPA "expects" to promulgate a new final rule. 49 U.S.C. § 32901(a)(16)(A).

As EPA elsewhere explains:

A typical model year for a vehicle begins in fall of the preceding calendar year and runs until late in the next calendar year. However, model years vary among

manufacturers and can occur between January 2 of the preceding calendar year and the end of the calendar year.[3]

By December 2026, therefore, the sensitivity factor will have caused many new automobiles to have lower compliance fuel-economy values than warranted, effectively increasing the stringency of the fuel-economy standards and depressing demand for Petitioners' products. Pet'rs' Br. 32–39, Doc. 30. Those automobiles will be on the road for decades to come, causing irreparable injury to Petitioners. 89 Fed. Reg. 22,041, 22,045–46 (Mar. 29, 2024) (noting the "average life of a vehicle is around 15 years," and some survive "for a 40-year span"); *see* Decl. of Taylor Myers, Ph.D. ¶ 13, Doc. 34-2.

EPA claims that Petitioners' modeling in support of standing doesn't show harm "until 2028 at the earliest," and implies that as long as EPA "complete[s] reconsideration" of the sensitivity factor before then, such harm will be averted. Motion 8. EPA is wrong. Petitioners presented a cumulative *calendar-year* analysis of gasoline demand-destruction due to the rule. But the decline in gasoline demand in a given calendar year arises from automobiles manufactured in that year *and prior model*

---

[3] EPA, EPA-420-R-23-033, *The 2023 Automotive Trends Report* 9 (Dec. 2023), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P10191S7.pdf.

*years.* So, the harm in 2028—and many later calendar years—arises, in part, from automobiles produced in model year 2027, including during all of calendar year 2026.

This Court, moreover, has no reason to assume that EPA will meet, of its own volition, a non-binding "expected" date. *Id.* at 7–8. EPA has already delayed action on the sensitivity factor for a decade. When it first delayed the adjustment, EPA promised it would have the data needed "in early to mid 2015." 79 Fed. Reg. at 23,532. Blowing past that expected deadline, EPA said in May 2020 that "final action" on the sensitivity factor was only "months away." 85 Fed. Reg. at 28,577. But EPA didn't finalize a sensitivity factor for nearly *four more years*. There is no reason to believe that EPA will act any more expeditiously now than it did in the last decade.

That's particularly true if the Court grants a voluntary remand without vacatur. That would leave in place the current sensitivity factor EPA likes, giving EPA no reason to act swiftly. Allowing an unlawful sensitivity factor to remain in place would thus encourage further foot-dragging and likely injure Petitioners for many model years to come,

while denying them the judicial review promised by Congress. *See Am. Pub. Gas Ass'n*, 22 F.4th at 1030.

### 2. *A remand would be against the public interest*

Second, a voluntary remand would not help "conserve the parties' and the Court's resources." Motion 7.

A voluntary remand comes too late to help parties *other than EPA*. Petitioners, and many others, have already sunk considerable resources commenting on EPA's flawed proposals—twice. Only for EPA to ignore the comments—twice. Petitioners then spent many hours preparing an opening brief, and declarations and analyses supporting standing. Only for EPA to seek a voluntary remand—without responding to Petitioners' arguments or confessing error. Remand will simply lead to another round of comments, and likely another round of litigation—including a new principal brief.

A voluntarily remand may temporarily conserve some judicial resources—denying judicial review always does. But any savings would be "superficial": a remand "may ultimately tax the judiciary's resources more by muddying the waters of courts' eventual review," and result in "a quagmire it could have avoided by denying remand." Revesz, *supra*, at

400. When EPA eventually promulgates a new rule, it's likely this same controversy will come back with a vengeance, in a more complicated procedural posture, years down the road. And then what? Who's to say EPA won't again exercise its claimed "right" to a "voluntary remand" if it senses another loss at hand? These headaches can be avoided by following the APA's text and exercising the Court's mandatory jurisdiction now.

Finally, the Court should consider the message a voluntary remand here would send to agencies: It would signal that judicial review can be denied so long as the agency claims a desire to "reconsider," even while acknowledging that "reconsideration may not result in a different" rule. Motion 7. Any judicial resources saved would come at the expense of agency accountability to the rule of law.

### C.    Vacatur Would Be Warranted

EPA's argument against vacatur—before a decision on the merits—is premature. EPA's argument against that remedy belongs in a response brief, which the agency has refused to file. *But see infra*. Once this Court has ruled in favor of Petitioners, however, vacatur *would* be warranted. In this Circuit, vacatur of an agency action is the "default" remedy for an

APA violation. *Chamber of Com.*, 88 F.4th at 1118; *see also* 5 U.S.C. § 706 (a "reviewing court *shall*" … "set aside agency action" held unlawful (emphasis added)).

EPA has not shown that this is one of the "rare cases" in which departure from this default rule is warranted. *Chamber of Com.*, 88 F.4th at 1118. "Two factors determine whether vacatur is warranted: (1) the seriousness of the deficiencies of the action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive consequences of the vacatur." *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022) (cleaned up). Both factors would militate in favor of vacatur here.

First, EPA is unlikely to "be able to justify its [original sensitivity factor] on remand." *Id.* EPA refuses to "concede" that its sensitivity factor "of 0.81 is incorrect or that the 2018 Study did not evaluate a large enough sample of vehicles." Motion 9. But EPA has admitted its original analysis was seriously defective by acknowledging "that vehicle technology has changed" since its original study, initiating "a new study" on newer vehicles, and stating "that 50 to 100 vehicles [are likely needed to] provide the Agency with sufficient confidence to determine the $R_a$

factor," Dunham Decl. ¶¶ 14–16, Doc. 46-2. With such significant changes to the test program, EPA's claim that "reconsideration may not result in a different [sensitivity] factor," Motion 7, is mere wishcasting. This is particularly true given that all other published studies—not to mention manufacturer certification data—are inconsistent with EPA's $R_a$ factor value. Pet'rs' Br. 28–29, Doc. 30.

Second, vacatur need not be disruptive. Courts have broad equitable power to shape remand orders. *See, e.g.*, *Chamber of Com. of U.S. v. Sec. & Exch. Comm'n*, 85 F.4th 760, 780 (5th Cir. 2023) (granting a "limited remand" in which agency must respond "within 30 days"). For example, this Court could remand the rule to the agency with instructions to reconsider Petitioners' argument that sufficient data already exists to support a sensitivity factor of "1.0," Pet'rs' Br. 28–29, Doc. 30, and vacate only if EPA fails to adequately respond within 90 days. *See Chamber of Com.*, 88 F.4th at 1118; *Am. Pub. Gas Ass'n*, 22 F.4th at 1030–31 (remanding "for the agency to take appropriate remedial action within 90 days" and providing that the rule "will automatically be vacated" if the agency misses that deadline). And, in any event, vacating the sensitivity factor now is no more "disruptive"

than EPA's own decade-long delay in promulgating it in the first place—which resulted in mandatory "double" testing of vehicles for years—or the enormous costs and fines the rule will predictably impose on automobile manufacturers. *See* Pet'rs' Br. 33–34 & n.2, Doc. 30.

### D. The Court Could Decide the Merits Are Conceded and Vacate Now

Finally, in the alternative, the Court could treat the merits as conceded. "EPA has neither conceded the record's infirmity nor identified any intervening events" and "expressly disclaim[ed] any 'error or impropriety,'" so this Court could "treat EPA's motion as a concession that its explanations fall short of the [APA's] requirement of reasoned decisionmaking, grant the motion to remand, and impose a deadline on the issuance of [a] revised" sensitivity factor. *Clean Wisconsin v. EPA*, 964 F.3d 1145, 1175–76 (D.C. Cir. 2020). If the Court chooses that path, then vacatur of the regulation would be appropriate, as explained *supra*. *See id.* at 1177 (weighing factors to determine whether vacatur is warranted).

## CONCLUSION

For the foregoing reasons, the Court should deny EPA's motion for a voluntary remand without vacatur or carry over the motion so it can be decided by a full merits panel after briefing and argument. In the alternative, the Court should treat the merits as conceded and vacate the rule.

November 19, 2024

Respectfully submitted,

/s/ James R. Conde
Michael Buschbacher
R. Trent McCotter
James R. Conde
 *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620
jconde@boydengray.com
*Counsel for Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service.

November 19, 2024

Respectfully submitted,

/s/ James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620
*Counsel of Record for Petitioners*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this opposition complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Fifth Circuit Rule 27.4 because it contains 4,673 words, excluding the portions exempted by Federal Rule of Appellate Procedure 27(a)(2)(B) and the items listed in Rule 32(f).

This opposition complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 27(d)(1)(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

November 19, 2024

Respectfully submitted,

/s/ James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, DC 20006
(202) 955-0620
*Counsel of Record for Petitioners*